**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| ANTHONY E. WILLIAMS, | : | Case No. 1:25-CV-1 |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | Magistrate Judge Kimberly A. Jolson |
| | : | |
| SGT. FRANKLIN, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**OPINION & ORDER**

Before the Court is Defendant Sgt. Franklin's Motion for Summary Judgment.    (Doc. 24).

For the following reasons, the Motion is **GRANTED**.    The Clerk is **DIRECTED** to enter

judgment in favor of Defendant and close this case.

## I.    BACKGROUND

Plaintiff Anthony E. Williams, who is currently incarcerated at Lebanon Correctional

Institution, filed this action seeking relief for events that occurred at the Hamilton County Justice

Center in Cincinnati, Ohio.    (Doc. 11).    Plaintiff's *pro se*, verified Amended Complaint provides

scant factual allegations for the events underlying this action.    He merely alleges that on January

9, 2024,[1] after "surrendering" with his hands in the air following an undescribed incident,

Defendant Franklin "football tackle[d]" him.    (*Id.* at 3).    Video footage helps to fill in the gaps.

(*See* Doc. 23 (Defendant's notice of manual filing of video footage) (hereinafter "Surveillance

Video")).

---

[1] The record shows the incident occurred on January 10, 2024.    (*See, e.g.*, Doc. 24-7 at 1 (response to resistance report stating the date of occurrence was 01/10/2024)).

Looking down from above, the video first shows Plaintiff and another inmate enter a circular room. (Surveillance Video at 0:14). After about a minute, the other inmate leaves. (*Id.* at 1:29). Plaintiff sits down on a chair. (*Id.* at 1:37). He appears to be speaking with someone outside of the room, but because the footage does not have audio, the Court cannot say for certain. (*Id.* at 1:48). Then an officer enters on Plaintiff's left. (*Id.* at 2:21). They speak for a few moments, then Plaintiff stands up. (*Id.* at 2:29). The officer gestures animatedly before reaching towards Plaintiff's left arm. (*Id.* at 2:32). Plaintiff pulls away then punches, appearing to make contact with the officer's head or face. (*Id.* at 2:35). The officer backs away, but Plaintiff follows him. (*Id.* at 2:39). The officer attempts to hit Plaintiff before Plaintiff throws another punch. (*Id.* at 2:43). At this point, the officer has exited the room through a door, and Plaintiff tries to follow. (*Id.* at 2:50). Then two different officers, one being Defendant Franklin, grab Plaintiff by his shirt and pull him back into the room. (*Id.* at 2:51). Though the angle of the footage makes some of the movements unclear, Defendant Franklin and the other officer forcefully bring Plaintiff to the ground with his hands behind his back. (*Id.* at 2:55). The two work together to handcuff Plaintiff's hands while other officers file into the room to assist. (*Id.* at 2:59). After a while, they bring Plaintiff to his feet and escort him out of the room. (*Id.* at 4:13). All told, Plaintiff reported he hit the first officer four times. (*See* Doc. 24-7 at 9).

Plaintiff alleges that Defendant Franklin's tackle hurt his wrist, right knee, and finger and that his right "rotatorcup is still messed up." (Doc. 11 at 3). A medical report shows that Plaintiff was examined by a nurse following the incident. (Doc. 24-8). Plaintiff had a small cut on his middle finger, which the nurse cleaned and covered with a bandage. (*Id.*). Plaintiff

2

reported right wrist pain, but the nurse found he had full range of motion, no redness, and no swelling. (*Id.*). The nurse scheduled Plaintiff for a wrist x-ray, but she cleared him to be returned to his unit. (*Id.*). For his part, the officer who Plaintiff struck sought medical attention at a hospital. (*See* Doc. 24-7 at 7; *see also id.* at 9 (stating the officer "sustained minor facial injuries and redness around his neck area")). Plaintiff was subsequently arrested (Doc. 24-5), and pled guilty to assault (Doc. 24-6).

The Court previously construed Plaintiff's Amended Complaint to raise a Fourteenth Amendment excessive force claim against Defendant Franklin in his individual capacity. (*See* Docs. 12, 14). Following the parties' consent to the jurisdiction of the Magistrate Judge under 28 U.S.C. § 636(c) and a discovery period (Docs. 19, 21, 22), Defendant Franklin filed a Motion for Summary Judgment (Doc. 24).

The Court noted Defendant did not serve the summary judgment motion on Plaintiff at his current address. (Doc. 27; *compare* Doc. 24 at 9 *with* Doc. 20 at 1). The Court ordered Defendant to re-serve Plaintiff and set Plaintiff's response deadline for the motion to 21 days after receipt. (Doc. 27). Defendant's counsel personally served Plaintiff with a copy of Defendant's Motion for Summary Judgment on April 7, 2026, making Plaintiff's deadline to respond April 28. (Docs. 28, 28-1). Plaintiff has not filed a response. This matter is ready for consideration.

## II.    STANDARD

A court grants summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is appropriately entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will

3

bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When a defendant shows there is insufficient evidence to support any element of the plaintiff's claim and moves for summary judgment, the burden shifts to the plaintiff to demonstrate a genuine issue for trial on which a reasonable jury could return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Ultimately, the Court asks "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251–52.

"Even when faced with an unopposed motion for summary judgment, the district court cannot grant a motion for summary judgment without first considering supporting evidence and determining whether the movant has met its burden." *Byrne v. CSX Transp., Inc.*, 541 F. App'x 672, 675 (6th Cir. 2013); *see also Delphi Auto. Sys., LLC v. United Plastics, Inc.*, 418 F. App'x 374, 380–81 (6th Cir. 2011). Yet "[i]t is not the duty of the district court . . . to search the entire record to determine whether there is a genuine issue of material fact." *Jones v. Kimberly-Clark Corp.*, 238 F.3d 421 (Table) (6th Cir. 2000) (citing *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404 (6th Cir. 1992)). Rather, "[t]he court may rely on the moving party's unrebutted recitation of the evidence in reaching a conclusion that facts are uncontroverted and that there is no genuine issue of material fact." *Id.* (citing *Guarino*, 980 F.2d at 410).

## III.   DISCUSSION

Though Defendant Franklin's Motion for Summary Judgment primarily argues that judgment should be granted in his favor by virtue of qualified immunity, the Court does not need to reach that question. (*See* Doc. 24). Ultimately, the Court finds no genuine issue of material

fact that Defendant Franklin violated Plaintiff's rights.

Because Plaintiff was a pretrial detainee at the time of these events, the Court looks to the Fourteenth Amendment's due process clause to evaluate Plaintiff's excessive force claim. *Kingsley v. Hendrickson*, 576 U.S. 389, 396–400 (2015) ("The language of the [Eighth Amendment's cruel and unusual punishment clause and the Fourteenth Amendment's due process clause] differ[], and the nature of the claims often differs. And, most importantly, pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically.'"); *Hale v. Boyle Cnty.*, 18 F.4th 845, 852 (6th Cir. 2021) (explaining detained individuals bring excessive force claims under the Fourteenth Amendment, and those claims are analyzed under an objective standard rather than the Eighth Amendment's objective–subjective standard); *Begley v. Tyree*, No. 17-5001, 2018 WL 3244508, at *2 (6th Cir. Feb. 13, 2018) ("Although Begley, as a pre-trial detainee at the time of the events in question, was not entitled to the direct protections of the Eighth Amendment, he was entitled to the same protections under the Fourteenth Amendment's Due Process Clause.").

"A Section 1983 claim brought by a pretrial detainee against an officer for using excessive force in violation of the Fourteenth Amendment requires that the pretrial detainee ([the] plaintiff) show 'that the force purposely or knowingly used against him was objectively unreasonable.'" *Washington v. Miami Cnty.*, No. 3:20-CV-173, 2022 WL 17326436, at *13 (S.D. Ohio Nov. 29, 2022) (quoting *Kingsley*, 576 U.S. at 396–97)); *see also Brawner v. Scott Cnty.*, 14 F.4th 585, 592 (6th Cir. 2021). Whether the use of force was objectively unreasonable, "turns on the 'facts and circumstances of each particular case.'" *Kingsley*, 576 U.S. at 397 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The Supreme Court instructs that "[a] court must make this

determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* And courts must account for the "'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" *Id.* (citing *Bell v. Wolfish*, 441 U.S. 520, 540, 547 (1979)) (alterations in original).

In determining the reasonableness or unreasonableness of force, courts consider factors such as:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* Yet, in the end, courts consider any relevant circumstance that may bear on the type of force used. *Id.* For example, while potentially relevant to the reasonableness analysis, an officer's "alleged departure from a local policy is not determinative." *Ayala-Rosales v. Teal*, 659 F. App'x 316, 321 (6th Cir. 2016).

Applying these principles to the record, the Court finds that Defendant Franklin has met his burden to show he is entitled to judgment as a matter of law. There is no genuine issue of material fact that the force used against Plaintiff was objectively unreasonable.

The circumstances surrounding Defendant Franklin's application of force as told by the Surveillance Video are straightforward. *See Hanson v. Madison Cnty. Det. Ctr.*, 736 F. App'x 521, 527 (6th Cir. 2018) (quoting *Green v. Throckmorton*, 681 F.3d 853, 859 (6th Cir. 2012)) ("Where, as here, there is 'a videotape capturing the events in question,' the court must 'view those facts in the light depicted by the videotape.'" (cleaned up)). Plaintiff punched an officer,

6

Defendant Franklin responded, and in responding, Defendant Franklin grabbed Plaintiff by his clothing, yanked him several steps, then took him to the ground. (*See generally* Surveillance Video). Under the *Kingsley* factors, Defendant Franklin's use of force directly responded to Plaintiff's attack, he used the necessary amount of force to bring Plaintiff to the ground, and stopped applying force once he subdued Plaintiff. (*See also* Doc. 24-7 at 10 (response to resistance investigation that concurred with "the force used to control and contain inmate Williams during the incident" and found "[t]he force complies with the use of force policy and procedures.")). Additionally, the video footage directly contradicts Plaintiff's account as told by his verified Amended Complaint. At the time that Defendant Franklin grabbed him by his shirt and brought him to the ground, Plaintiff's hands were not in the air "surrendering." (Doc. 11 at 3). Rather, when Defendant Franklin entered the scene, Plaintiff's arms and hands were by his sides, and he was trying to leave the room. (Surveillance Video at 2:46). Though Plaintiff may not have been physically resisting by that point and it does not appear Defendant Franklin made an effort to temper the amount of force used, the takedown occurred very close in time to Plaintiff's resistance to the first officer. (*Id.*). The security problem of an unrestrained inmate punching an officer was severe, and it was reasonable for Defendant Franklin to perceive that Plaintiff posed a threat. Finally, the Court considers that Plaintiff attests to pain in his wrist, knee, finger, and shoulder following the use of force (Doc. 11 at 3), and the after-incident medical report notes limited injuries (Doc. 24-8 ("Pt stated he had a small cut on his L middle finger, area cleaned and covered w/ band aid. Pt also reports R wrist pain, full ROM intact no redness or swelling noted . . . [Plaintiff] cleared to return to unit at this time.")).

All told, Defendant Franklin has met his burden to show there is insufficient evidence to

support that his application of force was objectively unreasonable.   As the Supreme Court has found, "[o]fficers facing disturbances 'are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving.'"   *Kingsley*, 576 U.S. at 399 (citation omitted).   The unrebutted video evidence demonstrates that is the exact situation here. The Court owes deference to Defendant Franklin's actions to maintain order and security in the face of the threat posed by Plaintiff.   *Id.* at 399–400.   This is particularly true in light of what a reasonable officer would know at the time:   Plaintiff had struck an officer and was unrestrained. Further, though Plaintiff suffered some injury, Defendant Franklin's nonlethal use of force operated to subdue him, and Defendant Franklin stopped using force once Plaintiff was restrained. *See O'Hair v. Winchester Police Dep't*, No. 16-6235, 2017 WL 7240652, at *3 (6th Cir. Oct. 18, 2017) (finding force was objectively reasonable to subdue an escaping inmate where, among other things, "[t]he use of force was not gratuitous and did not amount to punishment, and [the plaintiff] suffered injuries only from the use of non-lethal force").   Even more, the sole medical record before the Court shows Plaintiff suffered limited injuries only rather than significant injuries. This supports the notion that Defendant Franklin's did not use gratuitous force.   Based on the unrebutted facts, no reasonable jury could find that Defendant Franklin's actions were objectively unreasonable.

Because Plaintiff did not provide more than bare bones factual details in the verified Amended Complaint or a response to the summary judgment motion, the Court has nothing else to consider.   In other words, there is no genuine issue of material fact as to the reasonableness of Defendant Franklin's use of force.   Consequently, summary judgment is appropriate.

8

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment (Doc. 24).    The Clerk is **DIRECTED** to enter judgment in Defendant's favor and close this case.

IT IS SO ORDERED.

Date: May 19, 2026                                  */s/ Kimberly A. Jolson*
                                                    KIMBERLY A. JOLSON
                                                    UNITED STATES MAGISTRATE JUDGE

9